### NOVAKSKY et v STATE

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 5, 1934

### OPINION

By LEMERT, J.

From an examination of the whole of the

314

Kaufman & Neiman, Youngstown, for plaintiffs in error.

J. H. Leighninger, Prosecuting Attorney, Youngstown, for defendant in error.

## OPINION

By ROBERTS, J.

There is no contention in this case but that Steve Novaksky and Mary Katherine Libertin had been cohabiting together for several months previous to the commission of the alleged offense, which is said to have occurred on ·the 15th day of March, 1932. It is claimed that the testimony of Mary Libertin is not corroborated by other evi-· dence. . She testifies that on two occasions. some time previous to the commission of the alleged offense, she called upon doc- tors in this city for an examination to de- termine as to whether ·or not she was as a matter of fact pregnant. On one of these· occasions Novaksky was with her, and there

is evidence to the effect that some communication was had between Steve and the doctor. The evidence strongly indicates that at that time she was interested in her condition. Several months before Steve and Mary made a trip to New Castle and each testifies, she relying probably largely upon what Steve told her, that they there secured a marriage license, and intended to stop at the office of some justice of the peace, whose name I do not recall, for the purpose of having a statutory marriage performed. Steve reported to her that the justice was not at home and that they would come back to Youngstown and visit the justice again, perhaps the next day. They never did go back and no statutory marriage was ever performed.

The complaining witness testifies that after these two visits had been made to the doctors, Steve suggested to her that she go some place with him, he not stating where; that she accompanied him and that he took her to the home of the defendant Belle Smith; that not much of anything was said in her presence, but Belle Smith invited her to go into a bed room and she, still not knowing what the purpose was, but assuming, as she testifies, that Novaksky wanted more positive assurance of her pregnant condition, took her to Belle Smith for the purpose of determining that proposition, that Belle Smith caused her to lie down upon the bed, threw her clothing up over her face. She couldn't see what was being done but she felt some hard substance being inserted into her person, which caused pain. She did not have an opportunity to see the instrument but she testified that just before that Belle went to a bureau and evidently took something out of a drawer and then afterwards returned it to the bureau. Upon some question being made by Mary Libertin as to what was being done, Belle Smith replied that, to use her language, "the water bag bursted and that she would be all right in a day or two." This was on the 15th day of March. She testified that on the next day, the 16th day of March, she miscarried. There is no other witness who testifies to the actual fact of the miscarriage. Mary Libertin testifies that she was ill in bed for about a week and that Steve took care of her during that time. It may be assumed that if the miscarriage had not taken place, Steve's mother and his sister, and other members of the family, with whom she and Steve were living at that time, could have testified with actual knowledge that such did

not result. None of these relatives were called upon to testify. Steve took Mary to the home of his parents immediately following this trip to New Castle and thereafter they occupied the same room and the same bed, he having told his folks, as is stated in the evidence, that they were actually married.

It is urged that there is no corroboration of her testimony. That was true, to a certain extent; no witness testifies to the actual fact of this operation having taken place. There is considerable corroborative testimony which tends to give probability to the testimony of Mary. The illicit relations are admitted. Steve, interested in her condition, took her to some doctor's office to have the proposition as to whether or not she was pregnant determined. The fact of knowledge which might otherwise have been produced, if her story was not true, that she did not miscarry, and other circumstances and conditions in the case tend to corroborate her testimony. That she was pregnant is testified to by two of her sisters, who noticed her altered appearance, so indicating, and one of them, if I remember correctly, testified to having interrogated her upon that proposition, and that condition having existed for some time, was not in evidence after the time of the alleged operation.

Now, upon the proposition that they were husband and wife, it being conceded that there was no statutory marriage ceremony, it is pertinent to inquire whether the relations, which are practically conceded, constituted a common law marriage. After a careful examination of the evidence we are unable to find anything of weight indicating that there was a common law marriage, or that such a marriage was contemplated by the interested parties. Their illicit relations previous to the time which they admitted and Steve claimed to have gotten a marriage license, if they did exist before that, were not referable to any agreement to be husband and wife and an entering into of that relation. The evidence all points, so far as their conduct is concerned, to an anticipation, so to speak, of an intended statutory marriage. There is nothing in the case to indicate that they at any time entered into an agreement that they should consider themselves and be, from that time husband and wife, but all of their previous and subsequent relations, to the extent that contemplation of marriage entered into the case, were that there would be a statutory marriage.

Not much time will be taken for the consideration of this proposition. Reference is made, however, to 26 Ohio Jurisprudence, 26, §4, under the subject of "Marriage":

"A common law marriage rests on contract. Cohabitation and acknowledgment of the marriage relation by a man and woman do not in Ohio constitute a valid marriage. There must be an actual contract of marriage, an actual agreement of the parties to live together as husband and wife. That is, it must appear that the woman was taken as a wife, and that the man was taken as a husband. Mutual assent by both parties to the relation of husband and wife is required. The fact that the marriage was not preceded by illicit relations does not alter this necessity. The agreement must be not merely a temporary arrangement. It must be for life."

Referring also to §§15 and 16, where the same subject is continued with reference to Ohio and other authorities. So that we do not recognize in this case the existence of a common law marriage. It was not within the contemplation of either of the parties so far as is disclosed by the evidence.

After the alleged abortion and about the time Mary Libertin was recovering from the effects of the operation, Steve left his mother's home, where this woman was then residing, and no relations were sustained thereafter, so that the testimony of Mary Libertin should not be considered as incompetent by reason of any marriage contract existing between them.

It is claimed that the trial court erred in omitting in the instructions to the jury to say anything in regard to the manner in which the jury should consider the testimony of an accomplice or more particularly to caution the jury with regard to the weight which should be given to the testimony of an accomplice. The law is well settled, by numerous authorities in this state, that corroboration by other witnesses in a case of this kind, or in a criminal action is not necessary or essential preliminary to a conviction.

It is difficult to find very much authority upon the second proposition, as to whether it is the duty of the trial court to suggest, in effect, that the testimony of an accomplice should be considered and weighed with caution. However, we have, after considerable industry exercised in that regard, failed to find any authority in the state of Ohio which recognizes as reversible error

the failure of a court to so instruct. Presumably such instruction is ordinarily given, as forms for it are found in different works of instructions to juries, but we do not find authority that failure to do so, although proper to do, constitutes reversible error.

Without taking time to read therefrom, the rule established by reported decisions in this state upon this subject is found in the following cases:

State v Reichert, 111 Oh St, 698, 702;
State v Lehr, 97 Oh St, 280;
Beckman v State, 122 Oh St, 445;
State v Robinson, 83 Oh St, 136;
Allen v State, 10 Oh St, 288, 305.

The latter is the leading case found in this state on this and kindred subjects, and is cited in perhaps all of the later decisions. We do not find that there was reversible error in the court failing or omitting to give this instruction, but there is another proposition now pertinent upon this subject and that is that no request was made by counsel for an instruction upon this matter of the trial court. Counsel expressed themselves, upon inquiry by the court, as satisfied with the instructions, or that nothing more was desired to be said. Perhaps the last pronouncement of the Supreme Court upon this subject as to requests is the case of Natural Gas Company v Church, reported in 126 Oh St commencing on page 140, and in the opinion on page 152 it is said:

"Criticism is made of the court's charge in that it omitted any instruction to the jury as to what elements should be considered by it in determining the value of the building destroyed. However, counsel for the gas company did nothing more than take a general exception to the court's charge. No request was made to the trial court to amplify the charge on the matter of damages in any way.

It has been held by this court in numerous instances that it is the duty of counsel to direct the trial court's attention to omissions in his charge; and having failed to do so in this case, no question is raised, excepting as to errors in the charge given."

Then citing earlier cases as follows:
Columbus Railway Company v Ritter, 67 Oh St, 53, 65 NE, 613;
State v McCoy, 88 Oh St, 447;
State v Driscoll, 106 Oh St 33;
Beeler v Ponting, 116 Oh St, 432;
Warden v Pennsylvania Rd., 123 Oh St, 304;

14 Ruling Case Law, 795, 796, 797.

All of these cases have been examined in the consideration of the case now for consideration. Anticipating that the inquiry might arise as to whether that rule was restricted to civil cases, we further call attention to the case of **State of Ohio v McCoy, 88 Oh St, 447,** which is a criminal case, and in the third paragraph of the syllabus it is said:

"A general exception to the charge of a trial court does not raise any question of error as to the omission of the court to give further correct instruction, but presents only questions of errors of law existing in the charge as given. **Columbus Ry. Co. v Ritter, 67 Oh St, 53,** approved and followed."

So that by reason of the authorities to which reference has been made, if there otherwise was any question regarding the testimony of an accomplice, it was waived by counsel by failing to request an instruction upon that subject.

There is another proposition involved in this case and that is as to whether or not Mary Libertin was as a matter of fact an accomplice. Her testimony constitutes largely the direct testimony in the case as to what took place. She was evidently believed by the jury, a verdict of guilty having been returned by it, and if her testimony is true and entitled to credit, she was not an accomplice; that she was taken by Steve to this woman's house, not knowing the purpose, suspecting it was to determine the question whether or not she was pregnant, and, as before stated, an operation was performed which she could not and did not see and did not anticipate, and she expresses in her testimony her repugnance to the operation and a desire, in fact, that a child be normally born if she was pregnant. So there is nothing in her testimony, which is testimony which must be largely relied upon in determining the weight of the evidence, to indicate that she was an accomplice, and for that reason, such being the fact, this instruction could not be given because she did not come within that definition. Upon the proposition generally as to whether the verdict is against the weight of the evidence, the evidence has to a considerable extent already been discussed. There is no doubt about her condition. There does not seem to be any doubt that she was relieved of that condition in some unnatural way. Belle Smith testifies that Steve brought Mary to her house on one occasion, which she says was on the 2nd of March, and that nothing wrongful took place at that time, and in this she is corroborated by a young woman and a young man and her children, but Mary testifies that the operation took place at another time, on the 15th of March, and concerning that date Belle Smith has no recollection, otherwise maintaining that no operation was ever performed by her.

The jury was satisfied under the instructions of the court that these defendants were guilty beyond a reasonable doubt. A perusal of the testimony and consideration of it impresses verity so far as the consideration of the court is concerned. We do not find that the verdict is against the weight of the evidence and the judgment of the Court of Common Pleas is affirmed.

Judgment affirmed.

LYNCH and SMITH, JJ, concur in the judgment.